O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GRAND GENERAL ACCESSORIES MANUFACTURING, a California corporation,

              Plaintiff,

    v.

UNITED PACIFIC INDUSTRIES INC., a California corporation; LUCIDITY ENTERPRISE CO., LTD., a corporation of Taiwan,

              Defendants.

  )
  )
  )
  )
  )
  )
  )
  )
  )
  )
  )
  )
  )
  )
  )
  )

Case No. CV 08-07078 DDP (VBKx)

**Order (1) Granting Defendants' Motion for Summary Judgment in Part (Dkt. No. 111); (2) Denying Plaintiff's Motion for Summary Judgment in Part (Dkt. No. 103)**

[Motions filed on May 28, 2010]

Before the Court is Plaintiff Grand General Accessories Manufacturing ("GGAM")'s Motion for Summary Judgment as to patent validity, patent infringement, and trade dress infringement, and Defendants United Pacific Industries, Inc. ("UPI") and Lucidity Enterprise Co. ("Lucidity") (together "Defendants")' Motion for Summary Judgment on all claims.

Plaintiff owns a number of design patents related to automotive stop/tail/turn ("S/T/T") lights. The feature uniting GGAM's line of S/T/T lights is a light bulb reflector that the parties refer to as the "web comb design." The design consists of

multiple facets arranged in a grid-like manner on the inner surface of a parabolic reflector, with a light bulb resting in the center of the reflector.  GGAM claimed the web comb design (displayed below) in U.S. Design Patent No. 463,590 (the "'590 Patent"), issued in 2002.



'590 Patent Fig. 2

According to GGAM, its entire series of S/T/T lights is an expansion of the basic design disclosed in the '590 Patent (described in the application as a "[r]ound decorative vehicle lighting reflector with segmented reflective surface.")[1] (Pl.'s Second Am. Compl. ("SAC") ¶ 17.)  The '590 Patent itself is not directly at issue in this case; Plaintiffs instead accuse Defendants of infringing seven separate S/T/T design patents that make use of the web comb design (and one additional non-S/T/T light design patent).  Plaintiffs also allege trade dress infringement under the Lanham Act.

_____

[1]   Although Plaintiff acknowledges that each of its S/T/T light design patents incorporate the basic web comb design disclosed in the '590 Patent, its expert contends that the designs are distinguishable from the '590 Patent because "they are all associated with the use of multiple LED sources and multiple reflectors," and the '590 Patent "discloses a single faceted reflector utilizing a single incandescent bulb." (Jiao Opp'n Decl. ¶ 4.)

For the reasons explained below, the Court is persuaded that Defendants are entitled to summary judgment in their favor on the grounds of patent invalidity with respect to <u>five</u> of Plaintiff's design patents, and on Plaintiff's trade dress infringement claim. Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment in part, and GRANTS Defendants' Motion for Summary Judgment in part.  In a separate, concurrently filed order, the Court directs the parties to file supplemental briefing addressing invalidity and infringement issues related to the three design patents-in-suit that the Court does not declare invalid in this order.

## I.   Background

Since 2002, Plaintiff has created a series of S/T/T lights incorporating the basic web comb design, and each design has a corresponding design patent. (SAC ¶ 16.) The disputed patents are listed below, along with the drawings submitted in the respective patent applications:

1) 570,012 ("'012 Patent") - "low profile round LED sealed light with spider design" - filed November 6, 2007; issued May 27, 2008 (Pl.'s Statement of  Uncontroverted Facts ("SUF") ¶ 13; Rozsa Decl. Ex. 7);



FIG. 2

3

2) 570,013 ("'013 Patent") – "low profile oval LED sealed light with spider design" – filed November 6, 2007; issued May, 27, 2008 (Pl.'s SUF ¶ 15; Rozsa Decl. Ex. 8);



FIG. 2

3) 474,303 ("'303 Patent") – "rectangular decorative reflector for vehicle light with multiple LEDs" – filed September 26, 2002; issued May 6, 2003, (Pl.'s SUF ¶ 7; Rozsa Decl. Ex. 3);



FIG.2

4) 474,559 ("'559 Patent") – "oval decorative reflector for vehicle light with multiple LEDs" – filed September 24, 2002; issued May 13, 2003 (Pl.'s SUF ¶ 9; Rozsa Decl. Ex. 4);



FIG.2

5) 507,670 ("'670 Patent") - "rectangle multi-LED spider marker light for vehicle" - filed November 22, 2004; issued July 19, 2005 (Pl.'s SUF ¶ 11; Rozsa Decl. Ex. 5);



6) 511,850 ("'850 Patent") - "square multi-LED spider marker light for vehicle" - filed November 22, 2004; issued November 22, 2005 (Pl.'s SUF ¶ 17; Rozsa Decl. Ex. 9)



7) 470,970 ("'970 Patent") - "round decorative vehicle reflector for vehicle light with multiple LEDs" - filed September 24, 2002; issued February 25, 2003 (Pl.'s SUF ¶ 5; Rozsa Decl. Ex. 8);



8) 548,038 ("'038 Patent") - "screw-in knob with fanciful design" - filed June 3, 2006; issued August 7, 2007 (Pl.'s SUF ¶ 19; Rozsa Decl. Ex. 10);



FIG. 1

The first seven patents are vehicle S/T/T or marker lights that rely on a multiplicity of faceted reflectors and an LED light in each reflector set to create the web comb effect.  The eighth patent (the '038 Patent) is an air valve knob with a diamond faceted jewel; the jewel being the sole ornamental aspect of the knob. (Pl.'s SUF ¶¶ 123-25.)

Plaintiff alleges that Lucidity copied Plaintiff's patented designs with the intention of duplicating its products. (SAC ¶ 37.) It alleges that it became aware that Lucidity and Defendant United Pacific Industries, Inc. ("UPI") were selling decorative vehicle lights that infringed its design patents sometime in 2008. (SAC ¶¶ 46-47.) The patents and products related to those patents are too numerous to describe here (they comprise approximately fifty pages of Plaintiff's SAC).

In October 2008, GGAM filed suit against Defendants for patent infringement, trade dress infringement, and various other causes of

action.  In June and July of 2009, UPI and Lucidity counterclaimed
against GGAM, raising various affirmative defenses.  On May 28,
2010, GGAM moved for summary judgment as to patent validity, patent
infringement, and trade dress infringement, and Defendants filed a
cross-motion for summary judgment on all claims.  The Court heard
oral argument on August 6, 2010.

**II.  Legal Standard**

Summary judgment, in patent as in other cases, is proper when
there is no genuine issue of material fact and the moving party is
entitled to judgment as a matter of law.  <u>Hodosh v. Block Drug Co.,
Inc.</u>, 786 F.2d 1136, 1141 (Fed. Cir. 1986).  The moving party bears
the burden of demonstrating the absence of any genuine issue of
material fact, and all justifiable inferences must be resolved in
the light most favorable to the nonmovant.  <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 322-23 (1986).  However, the moving party
need not disprove matters on which the nonmovant will have the
burden of proof at trial.  <u>Id.</u> at 322.

The movant can meet its burden by demonstrating "that there is
an absence of evidence to support the nonmoving party's case," thus
shifting the burden to the nonmovant to prove otherwise.  <u>Id.</u> at
325.  However, "[t]o create a genuine issue of fact, the nonmovant
must do more than present some evidence on an issue it asserts is
disputed."  <u>Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.</u>, 853
F.2d 1557, 1560 (Fed. Cir. 1988).  Rather, the nonmovant must
provide "specific facts showing that there is a genuine issue for
trial."  Fed. R. Civ. P. 56(e).  If, instead, the nonmovant's
evidence is "merely colorable, or is not significantly probative,

7

1  summary judgment may be granted." _Anderson v. Liberty Lobby, Inc._,

2  477 U.S. 242, 249-50 (1986).

3      It is not the Court's task "to scour the record in search of a

4  genuine issue of triable fact." _Keenan v. Allan_, 91 F.3d 1275,

5  1278 (9th Cir. 1996). Counsel have an obligation to lay out their

6  support clearly. _Carmen v. San Francisco Sch. Dist._, 237 F.3d 1026,

7  1031 (9th Cir. 2001). The Court "need not examine the entire file

8  for evidence establishing a genuine issue of fact, where the

9  evidence is not set forth in the opposition papers with adequate

10 references so that it could conveniently be found." _Id._

11 **III. Discussion**

12     **A. Design Patent Infringement**

13     "Whoever invents any new, original and ornamental design for

14 an article of manufacture may obtain a patent therefor, subject to

15 the conditions and requirements of this title." 35 U.S.C. § 171.

16 "As the statute indicates, a design patent is directed to the

17 appearance of an article of manufacture." _PHG Tech., LLC v. St._

18 _John Cos._, 469 F.3d 1361, 1366 (Fed. Cir. 2006). "If the patented

19 design is primarily functional rather than ornamental, the patent

20 is invalid." _Power Controls Corp. v. Hybrinetics, Inc._, 806 F.2d

21 234, 238 (Fed. Cir. 1986).

22     "The starting point for any discussion of the law of design

23 patents is the Supreme Court's decision in _Gorham Co. v. White_, 14

24 Wall. 511, 81 U.S. 511 (1871)." _Egyptian Goddess, Inc. v. Swisa,_

25 _Inc._, 543 F.3d 665, 670 (Fed. Cir. 2008). In _Gorham_, the Court

26 explained that the test for design patent infringement "must be

27 sameness of appearance, and mere difference of lines in the drawing

28 or sketch . . . or slight variances in configuration will not

destroy the substantial identity."  81 U.S. at 526-27.  "Identity
of appearance, the [Gorham] Court explained, or 'sameness of effect
upon the eye, is the main test of substantial identity of design';
the two need not be the same 'to the eye of an expert,' because if
that were the test, '[t]here never could be piracy of a patented
design, for human ingenuity has never yet produced a design, in all
its details, exactly like another, so like, that an expert could
not distinguish them.'"  Id. (quoting Gorham, 511 U.S. at 527).

   The Federal Circuit has made clear that the "ordinary
observer" test is the sole test for determining whether a design
patent has been infringed.  Egyptian Goddess, 543 F.3d at 678.
"Under that test . . . infringement will not be found unless the
accused article 'embod[ies] the patented design or any colorable
imitation thereof.'"  Id. (quoting Goodyear Tire & Rubber Co. v.
Hercules Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed. Cir.
1998)).

   The Supreme Court has long held that a design is better
represented by an illustration "than it could be by any description
and a description would probably not be intelligible without the
illustration."  Dobson v. Dornan, 118 U.S. 10, 14 (1886).
Accordingly, "[i]n many cases, the considerable effort in
fashioning a detailed verbal description does not contribute enough
to the infringement analysis to justify the endeavor."  Crocs, Inc.
v. Int'l Trade Comm'n, 598 F.3d 1294, 1302 (Fed Cir. 2010).

      1. Invalidity

   The Court first takes up Defendants' argument that Plaintiff's
patents are invalid.  "By direction of 35 U.S.C. § 282, an issued
patent is presumed valid."  KSR Int'l Co. v. Teleflex, Inc., 550

9

1    U.S. 398, 412 (2007).  Accordingly, "a moving party seeking to

2    invalidate a patent at summary judgment must submit such clear and

3    convincing evidence of facts underlying invalidity that no

4    reasonable jury could find otherwise." SRAM Corp. v. AD-II Eng'g,

5    Inc., 465 F.3d 1351, 1357 (Fed. Cir. 2006).

6                        a. *On sale bar*

7         An inventor loses his or her right to a patent if the

8    invention was "on sale in this country, more than one year prior to

9    the date of the application for patent in the United States."  35

10   U.S.C. § 102(b).  The party asserting the on sale bar must

11   demonstrate by clear and convincing evidence that there was a

12   definite sale or offer to sell more than one year before the patent

13   application.  Feraq AG v. Quipp, Inc., 45 F.3d 1562, 1566 (Fed.

14   Cir. 1995).  "A single sale or offer is enough to bar

15   patentability," but mere preparation for sale is insufficient.

16   Intel Corp. v. U.S. Int'l Trade Comm'n, 946 F.2d 821, 830 (Fed.

17   Cir. 1991).  Moreover, the overall appearance of the prior

18   invention must be virtually identical to the design of the

19   challenged patent.  Keystone Retaining Wall Sys. v. Westrock, Inc.,

20   997 F.2d 1444, 1451-52 (Fed. Cir. 1993).  Finally, the ultimate

21   determination that a product was placed on sale, although based on

22   the underlying facts, is a question of law.  Id. at 1451.

23        The Court is persuaded that the '038, '012, and '013 Patents

24   are invalid pursuant to the on sale bar.

25        '038 Patent

26        The '038 patent covers an air-valve knob with a faceted jewel.

27   The jewel is the sole ornamental aspect of the product.  Defendant

28

1  UPI has been selling a knob strikingly similar to one disclosed in
2  the '038 Patent (issued in 2008) since 2004.



**UPI's 2004 Product**

**'038 Patent**

11  UPI produced a copy of their 2004 catalog, which shows a
12  product in all relevant respects virtually identical to the one
13  disclosed in the '038 design patent being offered for sale, along
14  with an inventory history report stating that UPI had the cataloged
15  item in their warehouse at that time. (Lin Decl. Ex. 3.)[2]
16  Accordingly, the '038 Patent is invalid pursuant to 35 U.S.C. §
17  102(b).

18  <u>'012 Patent</u>

19  The '012 Patent is also invalid under 35 U.S.C. § 102(b).
20  Plaintiff was offering the product displayed below for sale as far
21  back as 2005 (the '012 Patent, issued in May 2008, is also
22  displayed for comparison):

23

24

25  [2]  Plaintiff does not address this evidence other than to
26  submit that Defendants' evidence (the catalogues and product
     inventory logs) was not disclosed in a timely manner and therefore
     should not be considered. (Pl.'s Mem. of P. & A. in Opp'n, 5:11-
27  17.) Plaintiff has not, however, filed a motion for discovery
     sanctions, which would be the appropriate course of action under
28  Central District Local Rules.  C.D. CAL. L.R. 37-4.





FIG. 2

The product that Plaintiff began offering for sale in 2005 is in all relevant respects virtually identical to the design disclosed in the '012 Patent.  Accordingly, the patent is invalid pursuant to the on sale bar.

'013 Patent

Plaintiff was offering the product displayed below for sale as far back as 2005 (the '013 Patent, application filed in November 2007, is also displayed for comparison):





FIG. 2

1    The product that Plaintiff began offering for sale in 2005 is

2  in all relevant respects virtually identical to the design

3  disclosed in the '013 Patent.  Accordingly, the patent is invalid

4  pursuant to the on sale bar.

5            b. *Obviousness*

6    Defendants also contend that Plaintiff's design patents are

7  invalid because "the subject matter as a whole would have been

8  obvious at the time the invention was made to a person having

9  ordinary skill in the art to which said subject matter pertains."

10  35 U.S.C. § 103(a) (1995).  The Supreme Court has summarized the

11  obviousness bar as follows:

12      If a person of ordinary skill can implement a predictable
       variation, § 103 likely bars its patentability. For the same
13      reason, if a technique has been used to improve one device,
       and a person of ordinary skill in the art would recognize
14      that it would improve similar devices in the same way, using
       the technique is obvious unless its actual application is
15      beyond his or her skill.

16  KSR Int'l Co. v. Telefelx, 550 U.S. 398, 417 (2007).

17    The obviousness analysis requires the Court to determine: (1)

18  the scope and content of the prior art;  (2) the differences

19  between the prior art and the claims at issue; and (3) the level of

20  ordinary skill in the pertinent art.  Graham v. John Deere Co., 383

21  U.S. 1, 17 (1966).  In addition, secondary considerations such as

22  commercial success, licensing to third parties, and unpermitted

23  copying can provide evidence that a design was not obvious.

24  Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, 45 F.3d

25  1550, 1555 (Fed. Cir. 1995).  In the end, however, the obviousness

26  of a design is a conclusion of law, based upon factual

27  underpinnings.  Jurgens v. McKasy, 927 F.2d 1552, 1558 (Fed. Cir.

28  1991).

1    The first step in the analysis is to determine "whether there
2 is a reference to something in existence, the design
3 characteristics of which are basically the same as the claimed
4 design." L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117,
5 1124 (Fed. Cir. 1993) (internal citations omitted).  These prior
6 art references may take the form of other patents, printed
7 publications, or actual items which were in public use more than
8 one year prior to the contested patent application.  In re Harvey,
9 12 F.3d 1061, 1065 (Fed. Cir. 1993).  Such references must have
10 existed at the time of invention, and hindsight may not be used to
11 determine that the challenged design was obvious.  Id.  Moreover,
12 in conducting this analysis, the court must look at the design as a
13 whole, rather than merely referencing its component parts.  Id.  If
14 the prior art merely suggests "components of the [challenged]
15 design, but not its overall appearance, an obviousness rejection is
16 inappropriate."  Id. at 1063.

17    For design patents, obviousness is determined from the vantage
18 of the "designer of ordinary skill or capability in the field to
19 which the design pertains."  L.A. Gear, 988 F.2d at 1124.  This
20 hypothetical designer is presumed to have perfect knowledge of all
21 pertinent prior art.  The subjective knowledge of particular
22 designers is not controlling.  Tveter v. AB Turn-O-Matic, 633 F.2d
23 831, 834 (9th Cir. 1980).  When analyzing this factor, courts may
24 consider "opinion testimony by experts concluding that an invention
25 would or would not have been obvious."  Petersen Mfg. Co. v.
26 Central Publ'g, Inc., 740 F.2d 1541, 1548 (Fed. Cir. 1984).
27 However, such opinions do not necessarily preclude the grant of
28

14

1   summary judgment against the offering party because the obviousness
2   of a design is a question of law for the court to resolve.  Id.

3        Finally, objective evidence such as commercial success,
4   unpermitted copying, or licensing agreements with third parties is
5   relevant to the question of a design's obviousness and must be
6   considered.  Glaverbel, 45 F.3d at 1555.

7        The Court is persuaded that the '850 and '670 Patents are
8   invalid pursuant to the obviousness bar.

9        The '670 and '850 Patents combine well-known S/T/T housing
10  templates with an array of LED bulbs, each situated in the center
11  of a web comb reflector.  In light of the '303 Patent, the later-
12  in-time '670, '850, and Patents would be obvious to a designer of
13  ordinary skill in the art; or indeed, to any ordinary observer:

14

15                    **'303 Patent (issued 2003)**

16



FIG.2

22       The '670 Patent is an obvious reformulation of the above
23  design, tweaked to fit in a style of S/T/T housing that was
24  indisputably a component of the prior art.[3]  The only discernable
25  difference is the number of bulbs.  The Court is persuaded,
26  however, that a designer with ordinary skill would have found the

27  _____

28       [3]   Plaintiff did not disclose the '303 Patent as prior art
     in its application for the '670 Patent.

addition of an additional row of four bulbs to be an obvious extension of the prior art.

**'670 Patent**          **U.S. Patent No. 6,095,663 (filed 1997)**





The '850 Patent is a similarly obvious application of the web comb design to a previously established style of S/T/T housing:

**'850 Patent**          **NAPA S/T/T Light (on sale in 1999)**





1      Plaintiff relies on the testimony of its expert, Dr. Jianzhong

2   Jiao, an engineer with extensive experience in the automotive

3   lighting sphere, to rebut Defendants' obviousness evidence.   Dr.

4   Jiao's testimony is insufficient to create a genuine issue of

5   material fact with respect to the '670 and '850 Patents.   In

6   defending the non-obviousness of Plaintiff's designs, Dr. Jiao

7   offers only conclusory assertions regarding the overall visual

8   impression that Plaintiff's products convey.   The following is

9   typical of his testimony:

10      An LED light source is a prior art, a faced[sic] reflector is
        a prior art, and a round, square, oral[sic] shape automotive
11      lamp is prior art.  However, combining LEDs, faceted
        reflectors and arranging them in the particular configuration
12      in a given shape automotive lamp to achieve unique lit and
        unlit visual ornamental characteristics is certainly
13      patentable.

14   (Jiao Opp'n Decl. ¶ 7.)  As Dr. Ziao acknowledges, the web comb

15   faceted reflector design and the various forms of S/T/T light

16   housing are indisputable components of the prior art.  As are, of

17   course, LED light sources.  Dr. Ziao contends, however, that the

18   arrangement of the bulbs and reflectors into a "particular

19   configuration" produces "unique visual characteristics."  (<u>Id.</u>)

20   With respect to the '850 and '670 Patents, the Court is

21   unpersuaded.  The unique characteristics that Plaintiff stresses

22   amount to obvious, straightforward arrangements of bulbs and

23   refelctors into identical rows.  By Plaintiff's logic, any number

24   of LED bulbs and reflectors (e.g., twelve instead of fourteen, four

25   rows of three instead of three rows of fours) would be non-obvious

26   and thus patentable because of each arrangements unique visual

27   characteristics.  This is not the law.  Accordingly, the Court

28   concludes that the '670 and '850 Patents are invalid in light of

1  the '303 Patent and the other prior art in the summary judgment

2  record.[4]

3      **B.   Trade Dress Infringement**

4      Plaintiff filed suit for trade dress infringement under

5  Section 43(a) the Lanham Act.  See 15 U.S.C. § 1125(a).  The Act

6  states, in relevant part:

7          (1) Any person who, on or in connection with any goods or
           services . . . uses in commerce any word, term, name, symbol,
8          or device, or any combination thereof, or any false
           designation of origin, false or misleading description of
9          fact, or false or misleading representation of fact, which--

10         (A) is likely to cause confusion, or to cause mistake, or to
           deceive as to the affiliation, connection, or association of
11         such person with another person, or as to the origin,
           sponsorship, or approval of his or her goods, services, or
12         commercial activities by another person, or

13         (B) in commercial advertising or promotion, misrepresents the
           nature, characteristics, qualities, or geographic origin of
14         his or her or another person's goods, services, or commercial
           activities, shall be liable in a civil action by any person
15         who believes that he or she is or is likely to be damaged by
           such act.
16
17  15 U.S.C. § 1125(a).

18      "Trade dress refers generally to the total image, design, and

19  appearance of a product and may include features such as size,

20  shape, color, color combinations, texture or graphics."  Clicks

21  Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258 (9th Cir.

22  2001).  "Distinctiveness is . . . an explicit prerequisite for

23  registration of trade dress . . . ."   Wal-Mart Stores, Inc. v.

24  Samara Bros., Inc., 529 U.S. 205, 210 (2000).  The Lanham Act also

25  "require[s] that a producer show that the allegedly infringing

26  _____

27      [4]   Because the Court concludes that the '670, '850, '012,
    '013, and '038 Patents are invalid, it does not reach Defendants'
28  anticipation and inequitable conduct affirmative defenses, or their
    arguments regarding non-infringement.

                                    18

1  feature is not 'functional' . . . and is likely to cause

2  confusion." Id.

3       For the reasons explained below, the Court is persuaded that

4  Plaintiff has not produced competent evidence establishing the

5  distinctiveness element of its trade dress infringement claim, and

6  thus, that Defendants are entitled to summary judgment.

7       Distinctiveness is established by "any word, term, name,

8  symbol, or device, or any combination thereof . . . which . . . is

9  likely to cause confusion . . . as to the origin, sponsorship, or

10 approval of his or her goods . . . ." Wal-Mart Stores, Inc. v.

11 Samara Bros., Inc., 529 U.S. 205, 209 (2000).

12      Trade dress protection was traditionally applied only to a

13 product's packaging, but the doctrine has been expanded to include

14 the design of a given product as well.  The standard for

15 establishing distinctiveness, however, differs for the two types of

16 trade dress.  Product design trade dress is "protectible only upon

17 a showing of secondary meaning," Wal-Mart, 529 U.S. at 216,

18 whereas, other forms of trade dress can be protected when they are

19 inherently distinctive or if they acquire secondary meaning.

20 Plaintiff, here, alleges product design trade dress, and thus it

21 must establish secondary meaning.

22      Secondary meaning can be established through direct evidence

23 (i.e., consumer surveys and testimony), or circumstantially through

24 "exclusivity, manner, and length of use of a mark; amount and

25 manner of advertising; amount of sales and number of customers;

26 established place in the market; and proof of intentional copying

27 by the defendant."  Filipino Yellow Pages, Inc. v. Asian Journal

28 Publ'n, Inc., 198 F.3d 1143, 1151 (9th Cir. 1999).

1    Plaintiff claims that the lamp's web comb design has become
2 associated with GGAM and has secondary meaning. (Pl.'s SUF ¶ 52.)
3 Upon careful review of the record, the Court concludes that
4 Plaintiff has provided no direct evidence (consumer testimony or
5 surveys) regarding an established secondary meaning.  Plaintiff has
6 provided one article and declarations from its own employees.  The
7 testimony from Plaintiff's employees has very limited probative
8 value.  <u>Filipino Yellow Pages</u>, 198 F.3d at 1152 (explaining that
9 self-serving statements from a litigant's own employees carry
10 little weight); <u>see Self-Realization Fellowship Church v. Ananda</u>
11 <u>Church of Self-Realization</u>, 59 F.3d 902, 910 (9th Cir. 1995)
12 (concluding that declarations from a trademark plaintiff's
13 employees and wholesalers had "little probative value regarding the
14 assessment of consumer perception" because "[t]rademark law is
15 skeptical of the ability of an associate of a trademark holder to
16 transcend personal biases to give an impartial account of the value
17 of the holder's mark").  The article Plaintiff relies on provides
18 little information about consumer behavior beyond noting that
19 Plaintiff's product is a hot seller, and it does not reference
20 Plaintiff's design or its connection to the mark.  Even if the
21 article offered more in the way of substance, "[t]estimony from a
22 single source is insufficient to demonstrate secondary meaning."
23 <u>See Art Attacks Ink, LLC v. MGA Entm't. Inc</u>., 581 F.3d 1138, 1146
24 (9th Cir. 2009).
25    Plaintiff also asserts that secondary meaning can be
26 established through exclusivity, manner, and length of use because
27 they were the first to introduce S/T/T lights into the market with
28 the specific web comb design. (Huang Decl. ¶ 21.) Defendants

1  persuasively counter that as many as eight other companies are

2  selling similar products (including two competing products that

3  employ the specific web-comb design), there was no consistent

4  manner because the lighting pattern is not the same throughout the

5  product line, and even assuming Plaintiff has been selling web

6  comb-based products for a significant period of time, secondary

7  meaning was not established at any point.

8      Plaintiff states that it has spent over $500,000.00 in

9  advertising their "Spyder" line of products, and that this

10  advertising effort supports a finding of secondary meaning. (Pl.'s

11  SUF ¶ 68.)  Advertising is relevant, but "the true test of

12  secondary meaning is the effectiveness of the advertising effort."

13  <u>Art Attacks</u>, 581 F.3d at 1146 (internal quotations omitted).

14  Plaintiff has provided no evidence of the effectiveness of their

15  advertising in creating a secondary meaning other than providing

16  the dollar figure of their advertising budget, which has little

17  meaning without context.

18      Amount of sales, customers, and an established place in the

19  market can also be evidence of secondary meaning.  The evidence

20  that Plaintiff provides (raw sales figures), however, has limited

21  value without further details regarding market and competitor sales

22  figures.

23      Plaintiff also alleges that Defendant intentionally copied

24  their designs by sending employees to trade shows to photograph

25  Plaintiff's products, and to use the pictures to make duplicate

26  products. (Pl.'s SUF ¶¶ 55, 65.) The incidents, however, are only

27  recounted by Plaintiff's employees without any corroborating

28  evidence, and are strongly disputed by Defendant. (Defs.' SIMF 55,

21

65.) Regardless, the alleged incidents are not sufficient on their own to establish secondary meaning.

In sum, Plaintiff has failed to provide clear and convincing evidence of secondary meaning, and thus, their motion for summary judgment on their trade dress infringement claim must be denied. Defendants have shown that there is no triable issue regarding secondary meaning, and accordingly, the Court grants their motion for summary judgment on Plaintiff's trade dress infringement claim.

**IV.  Conclusion**

For the reasons set forth above, the Court GRANTS Defendants' Motion for Summary Judgment in part, and DENIES Plaintiff's Motion for Summary Judgment in part.  The Court withholds ruling on the patent invalidity and patent infringement issues related to the '303, '970, and '559 Patents.  In a separate, accompanying order, the Court directs the parties to file supplemental briefing addressing several issues related to the '303, '970, and '559 Patents.


IT IS SO ORDERED.



Dated: August 9, 2010

DEAN D. PREGERSON
United States District Judge

22